RECEIVED BY MAIL
SEP 14 2026
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Ann Doucette
PO BOX 7312
Westlake Village, CA 91359
Email: russellranchroad@gmail.com
Tel: (424) 259-0221

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ANN DOUCETTE,
*Plaintiff, Pro Se,*

v.

DON RENALDO LEMON,
and DOES 1 through 25 inclusive,
*Defendants.*

Case No. 26-cv-01606-KMM-ECW

**FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND OTHER RELIEF**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. The Cities Church ("the Church") is a Christian house of worship in St. Paul, Minnesota.
2. On the morning of Sunday, January 18, 2026, Plaintiff Ann Doucette attended a worship service led by the Church's pastor.
3. During the worship service, Defendant DON RENALDO LEMON ("LEMON"), acting in concert and pursuant to an alleged pre-planned and coordinated agreement with other individuals, participated in an organized operation to enter the Church and disrupt the worship service.
4. Plaintiff alleges that LEMON was not merely an incidental participant. Rather, LEMON participated in the planning, coordination, promotion, facilitation, and execution of the operation, including by assisting in organizing the operation and livestreaming portions of the disruption.
5. The operation was carried out while Plaintiff and other congregants were lawfully gathered inside the Church for religious worship. The conduct included shouting,



SCANNED
SEP 14 2026
U.S. DISTRICT COURT MPLS

chanting, obstruction of movement, confrontation of the pastor and congregants, and conduct that created an atmosphere of fear and intimidation inside the sanctuary.

6. Among the statements shouted during the disruption was “Hands Up, Don’t Shoot!” The circumstances were sufficiently frightening that children present inside the Church were, according to Plaintiff’s firsthand observations, cowering in corners and against walls while the disruption was occurring.

7. Plaintiff experienced the incident as terrifying and traumatic. She feared for her own safety and the safety of other congregants, including children. The worship service, which Plaintiff had entered for the peaceful exercise of her Christian faith, was transformed into an atmosphere of aggressive shouting, intimidation, fear, and uncertainty.

8. Plaintiff continues to suffer emotional consequences from the incident. Since January 18, 2026, Plaintiff has experienced nightmares concerning the event and continues to experience emotional distress, fear, anxiety, and trauma associated with what occurred inside the Church.

9. This action seeks to hold LEMON accountable for his own conduct and for his participation in a coordinated plan with others to interfere with persons exercising their religious freedom at a place of religious worship, including conduct that Plaintiff alleges violated the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (“FACE Act”), as well as Minnesota tort law.

## PARTIES

1. Plaintiff Ann Doucette is an individual who, at all relevant times, was lawfully attending a worship service at Cities Church in St. Paul, Minnesota.

2. Defendant DON RENALDO LEMON is an individual who participated in, planned, coordinated, facilitated, promoted, and/or carried out the operation at Cities Church on January 18, 2026, as alleged herein.

3. LEMON is the sole Defendant named in this civil action.

4. Plaintiff Ann Doucette is a citizen and domiciliary of the State of California. Defendant

DON RENALDO LEMON is a citizen and domiciliary of a state other than California. Upon information and belief, Defendant LEMON maintains residences in the States of New York and Florida.

5. Plaintiff alleges that LEMON acted in concert and conspired with other individuals in planning and carrying out the operation. Those individuals are not named as defendants in this action. Their participation is alleged because it is relevant to establishing LEMON's own planning, agreement, coordination, intent, and conduct in furtherance of the alleged common plan.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248.
2. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen and domiciliary of California, while Defendant DON RENALDO LEMON is a citizen and domiciliary of a state other than California. Upon information and belief, Defendant maintains residences in New York and Florida.
3. The amount in controversy exceeds $75,000 because Plaintiff seeks compensatory damages for severe emotional distress, continuing trauma, nightmares, anxiety, fear, disturbed sleep, and other damages, together with punitive damages, statutory damages where available, injunctive relief, costs, and other relief authorized by law.
4. This Court has supplemental jurisdiction over Plaintiff's related Minnesota-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same January 18, 2026 incident and share a common nucleus of operative fact with Plaintiff's federal claim.

## FACTUAL ALLEGATIONS

1. On January 18, 2026, Plaintiff was attending a worship service at Cities Church in St. Paul, Minnesota.

2. The worship service was a lawful religious gathering. Plaintiff was exercising and seeking to exercise her First Amendment right of religious freedom at a place of religious worship,
3. Before and on January 18, 2026, LEMON allegedly participated in planning and coordinating an organized operation directed at entering the Church during worship and disrupting the service.
4. Plaintiff alleges, on information and belief, that LEMON and other participants communicated and coordinated before the operation, including with respect to logistics, timing, participation, promotion, and execution. (Exhibit A)
5. The operation was referred to as "Operation Pullup." Plaintiff alleges that the operation was promoted and organized in advance through communications and social-media activity, including livestreams and promotional materials. (Exhibit B)
6. Plaintiff further alleges that LEMON personally participated in the planning and coordination of the operation and that his involvement was material to the operation's execution.
7. At approximately 10:30am, LEMON stormed into the Church with another 20-30 agitators and took over the congregation with physical obstruction and complete chaos.
8. Their conduct inside the Church included loud chanting, shouting, aggressive gestures, and obstruction of aisles and movement, confrontation of the pastor and congregants, and physical occupation of areas within the Church in a manner that interfered with the worship service.
9. The participants shouted slogans including "ICE Out!" and "Hands Up, Don't Shoot!" during the disruption.
10. The statement "Hands Up, Don't Shoot!" was particularly frightening in the context in which it was shouted inside a Church during worship, where congregants were not expecting or prepared for a coordinated invasion.
11. Plaintiff personally observed children present inside the Church cowering in corners and against walls during the disruption.

12. The sight of children panicking and congregants experiencing extreme distress substantially contributed to Plaintiff's own emotional trauma.

13. Plaintiff reasonably believed that the situation could escalate into physical violence or other harm. The shouting, aggressive conduct, obstruction, and coordinated nature of the operation caused Plaintiff to feel unsafe inside what had moments earlier been a peaceful place of worship.

14. Plaintiff was not participating in a political demonstration or seeking confrontation. She was attending a Christian worship service and exercising her religious faith.

15. The disruption interfered directly with Plaintiff's ability to pray, worship, participate in the service, and peacefully exercise her religion.

16. LEMON livestreamed portions of the operation and thereby documented and/or promoted portions of the disruption, seemingly taking great pleasure in the hostile takeover.

17. Plaintiff alleges that LEMON's livestreaming was part of, or furthered, the coordinated operation and was not an isolated or accidental act unrelated to the disruption.

18. Plaintiff further alleges that LEMON knew, or was substantially certain, that the coordinated entry and disruption of an ongoing worship service would cause fear, intimidation, and interference with persons exercising their religious freedom.

19. The presence of children and other vulnerable congregants made the foreseeable emotional consequences of a loud, coordinated, and intimidating disruption inside the sanctuary particularly serious.

20. Despite the foreseeable consequences, LEMON allegedly proceeded with the operation and participated in conduct designed, at least in substantial part, to disrupt and interfere with the worship service.

21. Plaintiff alleges that LEMON and the other participants acted pursuant to a common plan or understanding to enter the Church and disrupt the service.

22. The agreement need not have been memorialized in a formal written document. Plaintiff alleges that the coordinated planning, communications, logistics, promotion, arrival,

entry, and conduct of the participants demonstrate a common purpose and coordinated action.

23. LEMON's participation in planning and coordinating the operation, together with his participation in the operation itself and his livestreaming of the event, constitutes conduct in furtherance of the alleged common plan.

24. Plaintiff does not allege that every participant acted identically or that LEMON personally committed every act committed by every other participant. Rather, Plaintiff alleges that LEMON knowingly participated in and furthered the coordinated operation and is liable for his own conduct and for the consequences of the conduct he personally undertook or substantially assisted in furtherance of the common plan, to the extent permitted by law.

## COUNT I

## VIOLATION OF THE FREEDOM OF ACCESS TO CLINIC ENTRANCES ACT 18 U.S.C. § 248(a)(2)

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. The FACE Act, 18 U.S.C. § 248(a)(2), prohibits the use of force, threat of force, or physical obstruction to intentionally injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship.
3. Cities Church is a place of religious worship.
4. At the time of the incident, Plaintiff was lawfully exercising and seeking to exercise her First Amendment right of religious freedom by attending and participating in a Christian worship service at Cities Church.
5. LEMON knowingly participated in an organized and coordinated operation directed at the Church during an ongoing worship service.
6. LEMON and the other participants entered the Church, following a pre-operation meeting at a local shopping center, and engaged in conduct that included shouting, aggressive conduct, physical occupation and obstruction of space, interference with

movement, confrontation, and disruption of the worship service.

7. The conduct was intended, at least in substantial part, to disrupt and interfere with the ongoing worship service and the persons participating in it.

8. The abrupt takeover intimidated and interfered with Plaintiff's exercise of religious freedom.

9. Plaintiff was personally present and was directly affected by the conduct. She experienced fear, intimidation, emotional distress, and interference with her ability to worship.

10. LEMON knew or reasonably should have known that physically entering and disrupting an ongoing worship service through coordinated shouting, obstruction, confrontation, and aggressive conduct would intimidate and interfere with congregants exercising their religious freedom.

11. The presence of children who were cowering in corners and against walls further demonstrates the intimidating and disruptive nature of the conduct.

12. Plaintiff alleges that LEMON's conduct falls within the conduct prohibited by 18 U.S.C. § 248(a)(2) because the alleged conduct involved more than protected peaceful expression: it involved coordinated entry, physical obstruction and interference, intimidation, and disruption of persons exercising religious freedom at a place of worship.

13. Plaintiff is an aggrieved person within the meaning of 18 U.S.C. § 248(c)(1)(A) and seeks the civil remedies authorized by the statute.

14. As a direct and proximate result of LEMON's violation of the FACE Act, Plaintiff suffered actual injury, including severe emotional distress, fear, anxiety, nightmares, trauma, loss of peaceful religious worship, and other damages according to proof.

**COUNT II**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**MINNESOTA COMMON LAW**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.

2. LEMON's conduct, as alleged herein, was extreme and outrageous and went beyond the bounds of conduct ordinarily tolerated in a civilized community.
3. LEMON allegedly participated in planning and coordinating a deliberate operation directed at entering an ongoing worship service and disrupting the religious exercise of congregants inside the Church.
4. The conduct included shouting, aggressive behavior, physical obstruction and interference, confrontation, and the disruption of a worship service in the presence of children and other congregants.
5. The shouting of "Hands Up, Don't Shoot!" inside the Church, combined with the other circumstances alleged herein, contributed to an atmosphere of fear and intimidation.
6. LEMON knew or recklessly disregarded the highly probable emotional consequences of such conduct.
7. The emotional distress actually suffered by Plaintiff was severe.
8. Plaintiff experienced fear and trauma during the incident and has continued to experience emotional distress, anxiety, nightmares, disturbed sleep, and psychological suffering since the incident.
9. Plaintiff's continuing nightmares and trauma are direct consequences of the frightening events she personally experienced inside the Church.
10. LEMON's conduct was a substantial factor in causing Plaintiff's emotional injuries.

**COUNT III**

**CIVIL CONSPIRACY**

**MINNESOTA COMMON LAW**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. LEMON is the sole Defendant named in this action. Plaintiff nevertheless alleges that LEMON entered into an agreement or understanding with other individuals to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.
3. The common purpose was to coordinate an operation to enter Cities Church during worship and disrupt, obstruct, intimidate, and interfere with persons exercising their

religious freedom.

4. Plaintiff alleges that LEMON participated in planning and coordinating the operation before it occurred and then participated in its execution.
5. The agreement and common purpose may be established by circumstantial evidence, including the coordinated planning, communications, logistics, promotion, arrival, entry, and synchronized conduct of the participants.
6. LEMON committed overt acts in furtherance of the alleged conspiracy, including his alleged participation in planning and coordinating the operation, his participation in the disruption, and his livestreaming of portions of the operation.
7. The conspiracy caused or substantially contributed to the underlying tortious conduct alleged herein, including intentional infliction of emotional distress and the conduct underlying Plaintiff's FACE Act claim.
8. Plaintiff suffered damages as a direct and proximate result of the acts undertaken in furtherance of the alleged conspiracy.

## COUNT IV

## TRESPASS / INTERFERENCE WITH PLAINTIFF'S LAWFUL PRESENCE AND USE OF THE PLACE OF WORSHIP

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. Plaintiff was lawfully present at Cities Church for the purpose of attending and participating in religious worship.
3. LEMON and those acting in concert with him entered and occupied portions of the Church during the worship service for the purpose of carrying out the coordinated disruption alleged herein.
4. The entry and occupation were undertaken for a purpose inconsistent with the peaceful worship for which Plaintiff and other congregants were present.
5. Plaintiff alleges that LEMON's conduct substantially interfered with her lawful use and enjoyment of the worship service and with her ability to remain peacefully present and participate in worship.

6. To the extent Minnesota law recognizes Plaintiff's claimed interest and remedy arising from such interference, Plaintiff seeks all damages and relief available under that law.

## DAMAGES

1. Plaintiff has suffered and continues to suffer damages as a direct and proximate result of LEMON's conduct.
2. Plaintiff's damages include severe emotional distress, anxiety, nightmares, trauma, disturbed sleep, loss of peace, loss of enjoyment of religious worship, and other psychological and emotional injuries.
3. Plaintiff's emotional injuries began during the incident and have continued thereafter. Plaintiff continues to experience nightmares and remains emotionally affected by what she witnessed, including the shouting of "Hands Up, Don't Shoot!" and the sight of children cowering in corners and against walls.
4. Plaintiff's injuries extend beyond the temporary disruption of a worship service. The incident caused continuing emotional trauma associated with an event that occurred in a place Plaintiff had entered for peaceful religious worship. Plaintiff seeks compensatory damages according to proof, including damages for past and continuing emotional distress and other injuries caused by LEMON.
5. Plaintiff also seeks any statutory damages and other relief available under the FACE Act, including any statutory amount authorized by 18 U.S.C. § 248(c)(1)(B), to the extent permitted by law.
6. Plaintiff seeks punitive damages to the extent permitted by applicable law because the conduct alleged was willful, malicious, intentional, or undertaken with reckless disregard of Plaintiff's rights and safety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ann Doucette respectfully requests that this Court enter judgment in her favor and against Defendant DON RENALDO LEMON and award the following relief:

1. Compensatory damages in an amount according to proof, including damages for emotional distress, anxiety, nightmares, trauma, disturbed sleep, loss of peace, loss of

enjoyment of peaceful religious worship, and other damages caused by Defendant's conduct;

2. Statutory damages available under 18 U.S.C. § 248(c)(1)(B), including $5,000 per violation, if Plaintiff elects statutory damages in lieu of actual damages as permitted by the FACE Act;
3. Punitive damages to the extent permitted by applicable law;
4. Temporary, preliminary, and/or permanent injunctive relief as authorized by the FACE Act and applicable law, including appropriate relief restraining Defendant and persons acting in concert with him from engaging in future conduct that violates Plaintiff's rights under the FACE Act;
5. Costs of suit and reasonable attorneys' fees, to the extent authorized by 18 U.S.C. § 248(c)(1)(B) and other applicable law;
6. Prejudgment and post-judgment interest to the extent permitted by law; and
7. Such other and further relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 1, 2026

Respectfully submitted,

Ann Doucette
*Plaintiff, Pro Se*